Your honors, may it please the court. My name is DeWitt Lacey. I represent the appellant and plaintiff in this action, Jami Tillotson, a public defender who was subjected to an unlawful arrest with lack of probable cause. We argue in violation of her First Amendment or Fourth Amendment protections against unreasonable seizure pursuant to her exercise of her First Amendment rights for free speech and in lieu of her duty to represent her client to his Fifth Amendment rights. The issue here really is whether or not law enforcement should be entitled to base an arrest or probable cause on someone exercising their First Amendment rights and whether or not retaliation can be the basis for an arrest. We argue that it cannot. Well, can I ask you a preliminary question? You said she was representing her client. I understand that she represented this person in another proceeding, but with respect to this investigation, this was just an initial investigation, so she wasn't really his lawyer for purposes of that investigation, I suppose. Well, would that have... I'm sorry, you said the officers wouldn't... Wouldn't know if she was an attorney representing one of these gentlemen in a different proceeding. I appreciate your question, Your Honor, and I disagree, in part because Ms. Tillotson made it very clear upon her approach to the officers that she was representing Mr. Jackson. And it was at that time, if there was any confusion about whether or not she represented him for the purposes of this investigation, Mr. Stansbury had the opportunity to inform counsel that this is a separate investigation, different from what he just came out of the courtroom for, literally, but he failed to do that. And so for that reason, we argue and we contend that she was representing, and she did have reason to believe that it was necessary for her to be there while her client was being interrogated and questioned without her... Yes, the question is where was she entitled to be? Was she entitled to move directly in front of the officer, as the video seems to suggest, and prevent the picture being taken, or is that, in your mind, a disputed issue of fact? I think that is a disputed issue of fact, Your Honor. Thank you for the question. It is a disputed issue of fact. Our Let me ask you this. Do you concede that, in fact, if she had planted herself directly in front of the individual whose photo the officer was trying to take, that that would present a different case and refuse to move? When you say a different case, I'm... I mean, would you have a case if, in fact, the evidence was undisputed that she had placed herself in front of the individual in question and refused to move when the officer was attempting to take a picture? Well, I think, it brings up different issues, but I think, realistically, Your Honor, the question is about whether or not there was... This action taken by Mr. Stansbury was done in a retaliatory manner, which is consistently against the law. Counsel, let me ask you a question that just ruled on that issue. And now, I may have missed something, but the way I read your 1983 complaint, the federal claim asserted was only said to be based there on the Fourth Amendment. Although, in some briefing, you mentioned the First Amendment issue. But if your federal complaint only related to the Fourth Amendment, federal claim might work under the Bain Act. Well, it's a great point, Your Honor. And I think it's a fair point. So for the federal causes of action, the 1983 causes of action, it is true that the only causes of action that were pled were relative and pursuant to Ms. Tillerson's Fourth Amendment rights. However, you are correct in saying that it would be applicable on the Bain Act analysis. And that's where we really get to the First Amendment rights. Because she was asserting not only her First Amendment rights, but also advocating for her client. And so for that reason, Your Honor, we do believe that the First Amendment rights come into the play of the analysis. And there's no... On the Fourth Amendment rights issue, it's an objective standard whether there's probable cause. But on the First Amendment issue, if the action, if the arrest was based on retaliation for exercising First Amendment rights, then I take it it wouldn't matter, even if there was probable cause, objectively to arrest her. That is right, Your Honor. And that's what the case law follows, it says. That regardless of whether or not there's probable cause, if the arrest was done for the purpose of retaliation of Ms. Tillerson exercising her First Amendment rights, that it wouldn't matter about the probable cause analysis underneath the Fourth Amendment. You wouldn't, the court wouldn't even reach that analysis. Let me try to cut to the chase, at least where one judge is seeing this. Saying why shouldn't we affirm the dismissal on qualified immunity as to the federal 1983 claims as pleaded by your client, but reverse the dismissal on the Bain Act claim because there's no qualified immunity under California law? And the answer is this, Your Honor. Because we didn't plead a Fourth or a First Amendment violation, it doesn't vitiate her rights under the First Amendment. It doesn't mean that those rights somehow disappear. We only chose to recover under the Fourth Amendment because we think the arrest was unlawful. And that was. Okay, go ahead. Okay. And that was because we believe that the arrest was done in a retaliatory fashion because Ms. Tillerson was advocating for not only her client, but also informing his co-defendant of his rights. Well, I am, what exactly is the exercise of First Amendment rights here that you're talking about? Is it, or, well, you just explained to me, is it what she said? Yes. And are we to ignore her conduct in evaluating a First Amendment claim here? If someone. Okay. You know, if she is interfering with an arrest or an investigation, can you separate the conduct of interference with her saying, I don't want you to do that? Well, she had a legitimate constitutional basis and interest in being present, Your Honor, because Mr. Jackson was her client. Mr. Harris was her client's co-defendant. Now, though law enforcement is entitled to engage in subterfuge with unwitting folks, right? Once someone is advised of or understands their rights, then the gig is up, so to speak. And they don't get to bully someone into adhering to that type of subterfuge. And what I mean by that is this. What is clear is that Ms. Tillotson was called out there because her client was being questioned and was being told to pose in certain ways, in which is not lawful. She advised her clients of her rights, of his rights. Then when Mr. Stansbury attempted to use the same tactics against Mr. Harris, she sought to advise him of the rights. And I think there's an important factual distinction here about this step that the court seems to be addressing. And when she steps to Mr. Harris's side, at this time, Mr. Stansbury addresses her and beckons for counsel, counsel, can we talk, counsel. And at that time, Ms. Stansbury, not Ms. Stansbury, Ms. Tillotson takes a step to the right and closer towards Mr. Stansbury based on the beckon and call from Mr. Stansbury. I think those are factual distinctions as to why she stepped that way that have to be determined by a jury before you can get to the analysis of qualified immunity. And I would like to reserve the rest of my time for rebuttal. I may please the court. Good morning. My name is Margaret Baumgartner. I represent the two officer defendants and the city and county of San Francisco in this matter. Sergeant Stansbury was in an awkward situation and publicly attempting to investigate a matter where the people that he was investigating didn't know all of the facts and he didn't want them to know all of the facts and he had no requirement that they know all of the facts. In this particular situation, a person who he understood to be an attorney for a different matter appeared and he allowed this attorney to speak to her client, to engage in her role to the extent that she actually had one in this particular case, which was questionable, until the point where she physically interfered with his ability to lawfully get a photograph of the person he had lawfully detained. There's no law here that suggests that Sergeant Stansbury had no right to detain these two men and to obtain their identification and their photograph. Counsel, Judge Gould, if I could ask you a question on that. I tend to agree with you on that and but yet it seems here that the arrest was somewhat speedy and precipitous. Although Ms. Tillotson may have invited it by, you know, saying go ahead rather than moving aside. Is this case just beyond hope that if we invoked the court's mediation procedures that your office and the office of the public defenders could work out a protocol that both sides agreed with and get rid of this of this lawsuit? Well, we're here and we do believe that Sergeant Stansbury and Officer Newker acted completely lawfully in this particular circumstance. There are, of course, other procedures that are not before this particular court about addressing the officer's behavior, but that's not what we're here to decide today. What we're here to decide today was whether Sergeant Stansbury reasonably determined that based on Ms. Tillotson's actions that she was interfering with his investigation and he had probable cause to arrest her. Okay, well let me ask you this. I think that would be the correct analysis under the Fourth Amendment issue because it's an objective standard, but the First Amendment issue, if there's retaliation for her speaking back to him, is not an objective standard. So why wouldn't we have to reverse the Bain Act dismissal because there's no qualified immunity on that? Well, first of all, I believe the undisputed facts show that the reason for this particular arrest was her actions and not her speech. So I think based on the undisputed facts in the record, including Sergeant Stansbury's statements in his deposition at ER, it's in the record at 293 and 294, about his reasons for arresting Ms. Tillotson and the fact that there is no facts in the record that suggests that this arrest occurred for any other reason. There are no facts in the record. Didn't the district court at one point make a statement that he thought there was a fact issue whether or he or she thought there was a fact issue whether the arrest was solely based on the interference or was based on speech? The district court did state that she was going into the qualified immunity analysis because of that issue, but it was still a Fourth Amendment issue that she was deciding about. It was not a First Amendment issue. It was a question of whether she actually interfered, and I believe that the facts in the record show that it's undisputed that she in fact interfered. I do want to point out that, for what it's worth, there is pending currently in front of the United States Supreme Court the case of Loxman v. City of Riviera Beach that addresses the issue about whether if there's a probable cause to arrest, whether you can even consider the First Amendment. That was argued in February, and the decision may come out in a couple days. There's a Ninth Circuit cert petition docket pending that case. Sorry, what is the issue there? It's a Fourth Amendment issue. It's not specifically a Bain Act issue, but what it says or what the question in the case is, is whether if there is probable cause, whether you even look to retaliation, whether there's any way to substantiate a claim for an arrest at all, even if it's motivated by speech, if there is in fact... If there's probable cause. If there's probable cause. So that does this interplay between the First Amendment and the Fourth Amendment, which has been a continuing issue in this circuit and some other circuits. And that case may be decided this week. I'm not certain about that, but... That goes to the question of if you're really motivated by the person's speech, but you also have, by what the person said, but you also have probable cause, you can go ahead and the arrest is all right. But I guess the question here is a little bit different. I take it your position is you can't carve out the speech from the conduct that she took part in when she stepped in front of the officer. That's correct. And that's what the case law acknowledges, is that a person's actions aren't completely removed from their speech. An officer can take into account the words that are being used to interpret the action of the person that the officer is arresting. And in this particular case, certainly, Ms. Tillotson's statements about what it was she was doing, her stated refusal to move with him aside so that he could speak to her outside the presence of the two suspects, and her statements when he gave her a last warning. He said, look, if you don't move, I'm going to need to arrest you. Throughout this entire encounter, Sergeant Stansberry was attempting to do his job to get this detention completed as soon as he possibly could. The one thing that's troubling me here is it seems to me that the arresting officer has to be judged by the circumstances that were known to the officer. Now, the officer, if I understand it, your opposing counsel said that the officer had been in the courtroom and knew that Ms. Tillotson represented one of these individuals. Is that correct? So he was not in the courtroom where these suspects had been subject to their proceeding. He was in a different courtroom. Well, did he know that she was representing one of these individuals in any capacity? She did state that she was representing a client in that particular circumstance, and there was no discussion about what that meant. But clearly, she was not representing her client in this particular circumstance. And in addition, she was not representing the person that Sergeant Stansberry was attempting to photograph at the time that Ms. Tillotson interfered. There's nothing in the record to suggest that the reason he was doing that photograph first was because he was then going to address Ms. Tillotson in some other way. That's possible. But he did choose to try and photograph Mr. Harris and not Mr. Jackson, most likely in part, as you can see from the video, that because Ms. Tillotson was next to Mr. Jackson at the time. So he was trying to get that done and then proceed to the next step. So in terms of Now, you say, counsel, that it's beyond doubt that Ms. Tillotson was attempting to interfere with the investigation. But as I understand it, I mean, the district court said, called it a close question. It said, viewing the evidence in the light most favorable to Ms. Tillotson, the court said that it cannot say that no reasonable juror could determine that plaintiff was merely voicing her objection and did not physically obstruct the investigation. What are we to do with that? So I believe that the district court has that wrong. I think that based on the record that's before this court and was actually before the court in that particular circumstance, it's undisputed that she actually interfered. Is it because we can look at the video and make our own determination? And because you can read Sergeant Stansberry's statement at deposition, in his deposition at ER 293 and 294 about his reasons for arresting Ms. Tillotson, that there is no contrary evidence in the record. Ms. Tillotson did not provide any such information. And his testimony is in fact supported by the videotape. It shows that he allowed all kinds of different people to speak surrounding this particular detention. Other people advising Mr. Jackson and Mr. Harris that they didn't have to answer questions, for example. That's also in the record in video two, where you can hear somebody telling them, you don't have to answer any questions. So when you look at all of the evidence in the case, not just the video, but all of the evidence in the case, all it shows is that he allowed other people to speak. And the only time he acted was when he could no longer take the photograph that he was attempting to take, that he needed to take, he believed, for his actual investigation of the underlying crime. Counsel, how do you, counsel, how do you deal with the fact that, if I have this correctly, in my memory, that the Office of Citizen Complaints, or whatever it is, the initials are OCC, said that the police officer acted too quickly and never gave an unequivocal command to Ms. Tilson to step aside? Well, somebody else's opinion about what the facts show is not binding or even relevant to this particular court or to the district court. Well, I was going to say that's certainly true, but I watched the videos and I didn't see any unequivocal statement, you must step aside or you'll be arrested. He said something like, we can do this one of two ways. You know, like, he did specifically step aside and give me two minutes to take these pictures. Or, you know, we can do it the hard way. And I mean, he may not have used those words, and you'll be arrested. And she said, arrest me or whatever. He did do. Yeah, she said, please do. He did specifically ask her to step aside and warned her, gave her a specific warning saying, if you do not step aside, I will arrest you. And that's when she said, please do. And again, the evidence in the record from Sergeant Stansberry's deposition is that he very much read that to say that she was not going to move out of the way no matter what he did. And at that point, that's when he actually decided to arrest her because he didn't have to engage in a standoff. Did she understand that this was a different investigation? Is that clear? That's what disturbs me about this. I understand. But on question, I mean, again, there's no evidence specific in the record, but of course she did because Sergeant Stansberry was not the officer who was involved in the matter that was pending that on which she was representing Mr. Jackson. She knew the incident report. She knew who was involved. She knew that Sergeant Stansberry was not involved in that particular matter and that this must be a different one. So there was nothing to suggest that she thought that this was actually the same investigation. And keep in mind, we're looking at the officer's point of view from this particular circumstance, not Ms. Tillotson's. So he, it's his point of view that matters here. With respect to getting back to Judge Gould's question about the Bain Act, there was no unlawful threats here to use force against somebody because of an exercise of their constitutional rights. She was not, because of the 148, she was not actually exercising her constitutional rights. And even if he was, he was reasonably mistaken about that particular circumstance. The Bain Act claims are not, well, there's a fairly new case that nobody cited, I know this because unfortunately it was my case, the Cornell case, where they do talk about the requirements of the Bain Act and it is far more than simply somebody makes a mistake, an officer makes a mistake about whether he has probable cause. There has to be a lot more there and that's not this circumstance. There's no indication of intent to violate. There has to be some intent to do what you're doing. Exactly. So unless the court has further questions, I will submit. No questions here. Thank you. Thank you. Thank you, counsel. Your Honors, just for the record, I'm going to make sure that my name is spelled D-E-Q and it should be D-E-W-I-T-T. Thank you very much. DeWitt. I wondered. That seemed like an odd name. Yeah. DeQuitt. DeQuitt would be different. As it is, Your Honors, this case is, it really reminds me of one of the old Scooby-Doo episodes where the bad guy at the end says, and I would have had it all done if it were me. And that is exactly the attitude that Mr. Stansbury had in this case. Is that he would have gotten whatever information he wanted from Mr. Jackson and or from Mr. Harris without counsel being there to advise them of their rights, which she's allowed to do. Well, yeah. She's allowed to advise. She's not allowed to interfere. Sure. But she didn't interfere. There's no reason that the officer couldn't have still taken those pictures. There's no reason. In fact, you can look to the reasonableness of other officers on that day. Officer Eddie Huang did take pictures of these individuals in the hallway. Now, what they can't do is tell the individuals to pose in a certain manner or make certain facial expressions. They're not entitled to those type of pictures. But sure, they could take pictures. And there's nothing that Ms. Tillerson did that would have stopped Mr. Stansbury from taking the picture. He could have still taken the picture. And furthermore, the question of whether or not she actually... She said we're done here. She was... Didn't she? Wasn't she saying you're not to proceed? We're done? I think what she said was... Isn't that what that meant? She said... Don't go any further? She said that they don't want to have their pictures taken. But that doesn't mean that he couldn't. Because she objected to the pictures being taken doesn't mean that it stopped him from doing that. That is a verbal objection, right? And she's allowed... I'm sorry? Didn't she also at one point say we don't need any pictures? That's what she said. She said we don't need any pictures, which is, again, a verbal objection. She's allowed to make. But that verbal objection does not then give right and give way to an arrest for interfering with an investigation, especially when she has the right to be there and advise her client. Furthermore, Your Honors, quickly, we addressed the Maine Act. And I know Ms. Baumgartner brought up Cornell as well. This Court has just reviewed recently in Reese v. County of Sacramento their Cornell decision as it applies to the Maine Act 52.1. The statement here, which is the coercive threat or intimidating tactic is if you don't move and if you don't stop talking to these folks, then I'm going to arrest you. It's a clear statement of coercive threat and intimidation. Ms. Tillerson did not have to move. This was a public area. There was no reason. These folks were not being arrested. There was no reason she had to move somewhere else. The officers didn't have any justification to demand that she move somewhere else. There's no interference. It's just not. Furthermore, on the issue of whether or not the arrest was reasonable, part of what was discussed were factual determinations. And that specifically is whether or not Ms. Baumgartner argued that it wasn't the speech at all that was the basis for the arrest, but it was the actions of Ms. Tillerson. This was the representation of the respondents here. And if that is the truth, then that is a factual determination that has to be made by a jury before qualified immunity can be granted. Because even the District Court acknowledged that it's a close call and it's one that the District Court was uncomfortable in making about whether or not Ms. Tillerson actually stepped in the way and or prevented the officers from taking the pictures. And with that... Counsel, am I right that there is no qualified immunity under the state law under the Bain Act? There is none, Your Honor. You are right. As well, Your Honor, the analysis that we give in this reasonableness of this arrest is the similar and same analysis that would be given for the remaining state law claims. That would be battery, that would be assault, and also IIED, intentional inflation of emotional distress, which this Court, or which the District Court dismissed. Thank you, Your Honor. Thank you. The matter just argued is submitted for decision. That concludes the Court's calendar for this morning. Court stands adjourned. Thank you. We thank both of you.
judges: Diaz, Schroeder, Gould